UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROMULO BARELA, ) | |
| ) | |
| Plaintiff, ) | 04 C 5144 |
| v. ) | |
| ) | Hon. Mark Filip |
| EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC., and ) | |
| WFNNB/AMERICAN HOME ) | |
| FURNISHINGS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER TRANSFERRING CASE PURSUANT TO 28 U.S.C. § 1404

Plaintiff Romulo Barela ("Barela" or "Plaintiff") sued defendants Experian Information Solutions, Inc. ("Experian"), and WFNNB/American Home Furnishings ("WFNNB"). Barela alleged violations of the Fair Credit Reporting Act (Count I) and defamation (Count II) against Experian, and violations of the Fair Credit Reporting Act against WFNNB (Count III). Barela has since settled his claim against Experian, which is no longer a party to the suit. The case is before the Court on the motion ("Motion") of WFNNB to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), or in the alternative, to transfer this matter to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §1404(a). (D.E. 20.)[1] As explained below, the Motion is granted in that the Court finds the balances of conveniences and the interests of justice clearly support the transfer of the case to the Southern District of Ohio.

---
[1] The various docket entries in this case are cited as "D.E. __."

## BACKGROUND FACTS

The plaintiff, Mr. Romulo Barela, is a citizen of New Mexico, and the defendant, WFNNB, is a national bank association whose principal place of business is in Ohio. (D.E. 4 ¶¶ 3, 5.) Plaintiff alleges that WFNNB "regularly conducts business in all cities and counties in the United States." (*Id.* ¶ 5.)

Plaintiff alleges, in Count III of his complaint, violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, against WFNNB. (D.E. 4, Count III.) Plaintiff alleges that Defendant failed, *inter alia*, to conduct an investigation regarding disputed credit information, to review relevant information concerning Plaintiff's account provided by a credit reporting agency, and to participate, investigate and comply with reinvestigations. (D.E. 1, Count III ¶ 33.) Plaintiff further alleges that Defendant furnished and disseminated inaccurate credit information about him. (*Id.*)

Plaintiff's complaint states that venue is proper in the Northern District of Illinois "pursuant to 28 U.S.C. §1391(b)." (D.E. 1 ¶ 2.) The complaint does not elaborate further as to why venue is proper in this particular district.

## DISCUSSION

1.  The Court Will Assume *Arguendo* That Venue Is Proper In Both The Northern District of Illinois and the Southern District of Ohio.

Section 1391(b) of Title 28 provides in relevant part that venue properly rests in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. §1391(b)(1), (2). If the propriety of venue is questioned, the burden of establishing that venue is appropriate rests with the plaintiff. *See, e.g. Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co.*, No. 99 C 3939, 2000 WL

263973, at *3 (N.D. Ill. March 6, 2003) (Williams, J.). The court accepts all well-pleaded facts in the complaint as true, unless they are contradicted by affidavits or other appropriate evidence from the defendant. *Id.* (collecting cases). Any factual disputes are resolved in the light most favorable to the plaintiff. *Id.*

Defendant WFNNB argues that venue is improper here because it is a national bank which for jurisdictional citizenship purposes is located in, and thus a citizen of, the state of its principal place of business (*i.e.*, Ohio) and the state listed in its organizational certificate (which is also Ohio). Defendant explains that Ohio is identified in its organizational certificate as the place where its operations of deposit and discount are to be conducted, and Defendant explains that it has no offices outside of Ohio. From this, Defendant argues that venue is not proper under 28 U.S.C. § 1391(b)(1). Defendant also explains that, based on Plaintiff's allegations, venue is not proper under 28 U.S.C. § 1391(b)(2) because no material events concerning the claim took place in the Northern District of Illinois, as opposed to in either Ohio or New Mexico. Specifically, the challenged events took place in Ohio, and the impact of any alleged harm was felt in New Mexico.

Plaintiff does not meaningfully respond to this argument, but instead proceeds immediately to an argument as to why transfer under Section 1404(a) is not required. Given that the Plaintiff bears the burden of establishing the propriety of venue, one perhaps might fairly find that Plaintiff has not carried his burden in the first instance.

The Court is reluctant to take that view because such an outcome would, at a minimum, seem to be in substantial tension with Seventh Circuit teaching in a related area of law. Specifically, in *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001), the

Seventh Circuit explained how citizenship issues are properly analyzed for national banks in diversity cases. *Firstar Bank* instructed that such issues for national banks are properly analyzed as though such banks are ordinary corporations. *Id.* at 993-94; *see also id.* at 988 (stating that "a national bank appears to be analogous in most respects to a corporation rather than some other kind of business organization . . . ."); *id.* at 993 (explaining that the Seventh Circuit was resolving the issue in a manner that "maintain[ed] jurisdictional equality between national banks and state banks or other corporations.").

For ordinary corporations, venue is proper in a district where the minimum contacts of that corporation are such that it would be appropriate to assert personal jurisdiction over the corporation in the district at issue. *See* 28 U.S.C. § 1391(c). Plaintiff asserts for Defendant WFNNB (and also asserted for presently dismissed Defendant Experian) that the corporations "regularly conduct[] business in all cities and counties in the United States." (D.E. 4 ¶¶ 4-5.) If that is the case, then venue might at least be permissible (even if it might not be most appropriate) in the Northern District of Illinois. *See* 28 U.S.C. § 1391(b)(1).

The issue is sufficiently unclear on the record presented that the Court thinks it most prudent to assume, at least for present purposes, that venue would at least be acceptable in the Northern District of Illinois. *Accord, e.g., Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002) (assuming the propriety of jurisdiction in the Northern District of Illinois before finding transfer was appropriate in any event under 28 U.S.C. § 1404(a)). The Court turns to the Section 1404(a) analysis.

4

2. Transfer to the Southern District of Ohio Is Appropriate Under 28 U.S.C. § 1404(a).

The Court will set forth the various factors identified in precedent as guiding the Section 1404(a) analysis. The Court notes, however, that two prior courts in this district have analyzed situations involving substantially similar transfer motions and have found, in both instances, that transfer was appropriate. *See Kapeluck v. Experian Info. Solutions, et al*, No. 03 C 3777, 2003 WL 23509647 at *2-3 (N.D. Ill. Dec. 18, 2003) (Gettleman, J.); *Heston v. Equifax Credit Info. Servs., et al*, No. 03 C 2476, 2003 WL 22243986, at *2 (N.D. Ill. Sept. 26, 2003) (Bucklo, J.) After considering the various factors and considerations in play in the instant case, this Court sides with the two prior decisions from this district and finds that transfer is appropriate.

Where venue is proper in two judicial districts and a party requests a transfer under Section 1404(a), the trial court looks at various factors. These factors include

> both the private interests of the parties and the public interest of the Court. Private interests include (1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the Court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, [and] (4) convenience to the parties – specifically, their respective residences and abilities to bear the expense of trial in a particular forum. Public interest factors include the Court's familiarity with applicable law and the desirability of resolving controversies in their locale.

*Vein Clinics of Am., Inc. v. Tex. Phlebology Assocs., P.A.*, No. 94 C 5267, 1995 WL 257869, at *3 (N.D. Ill. May 1, 1995) (Castillo, J.) (citations omitted). A district court's assessment of the propriety of transfer is reviewed for clear abuse of discretion. *See, e.g., Cont'l Ins. Co. v. M/V Orsula,* 354 F.3d 603, 608 (7th Cir. 2003) (collecting cases). A transfer under Section 1404(a) is not designed to simply shift inconveniences between equally situated parties; rather, the overall balance of inconveniences, and the broader

public interests at play, must clearly weigh in favor of transfer. *See, e.g., Fogelson v. Iatrides*, No. 99 C 6892, 2000 WL 631293, at *4 (N.D. Ill. May 12, 2000) (Kocoras, J.); *Publ'n Mgmt. Inc. v. Am. Def. Preparedness Ass'n*, No. 89 C 1110, 1989 WL 165056, at *2-3 (N.D. Ill. Dec. 29, 1989) (Kocoras, J.).

A review of the applicable factors leads this Court to the same conclusion reached by Judges Gettleman and Bucklo in similar cases—namely, that transfer is appropriate. The reasons for that conclusion are discussed below.

While a plaintiff's choice of forum normally carries substantial weight, the significance of that choice is materially diminished when, as here, "no significant connection to the chosen forum exists." *Heston*, 2003 WL 22243986, at *1; *accord, e.g., Commercial Union Ins. Co. v. Auto Europe, L.L.C.*, No. 01 C 6961, 2002 WL 47026, at *2 (N.D. Ill. Jan. 10, 2002) (Darrah, J.) ("[T]he weight granted to the plaintiff's choice of forum is significantly diminished when the events giving rise to the cause of action took place outside the plaintiff's choice of forum."); *Binz v. Iowa Interstate R.R., Ltd.*, No. 98 C 6381, 1999 WL 90642, at *1 (N.D. Ill. Feb. 10, 1999) (Kocoras, J.) (stating that the choice of forum "has minimal value" under such circumstances) (internal quotations and citations omitted).

Analysis of the situs of material events cuts clearly and substantially against this district. The relevant events and the effects thereof took place in the Southern District of Ohio and in New Mexico. Although the effects of a bad credit report arguably reach, in some generic sense, everywhere in nation (and perhaps even beyond), that analysis is too vague to be meaningful. The generic impact of a bad credit report cuts equally in favor of Seattle, Maine, and the Florida Keys as it does Chicago. Any realistic assessment of

the relevant events and alleged harms points clearly and strongly to the Southern District of Ohio (or perhaps New Mexico) and not here.

No one suggests that any relevant evidence is naturally situated here in Chicago, as opposed to, in substantial part, in Ohio. The Court does not put substantial weight on the fact that any and all documentary evidence is located elsewhere, at least where, as in this case, the relevant evidence does not appear to include substantial amounts of documentary material. *See, e.g., Dortch v. Fin. Alternative, Inc.*, No. 01 C 7416, 2002 WL 598518, at *4 (N.D. Ill. Apr. 17, 2002) (Darrah, J.) (explaining that documents could be photocopied and transferred). Still, it appears clear that none of the relevant witnesses are located in this district. Most (if not virtually all) of those witnesses appear to be in the Southern District of Ohio, and Plaintiff is in New Mexico. One can safely assume the WFNNB could require its employees to travel here from Ohio for trial. Nonetheless, as one might expect, precedent teaches that it is still sensible to consider the residence of witnesses employed by parties, and to consider related travel cost and lost-work issues attendant to a distant trial, when trying to make a pragmatic assessment of whether a venue transfer is warranted. *See, e.g., Martz v. Archer-Daniels-Midland Co.*, No. 94 C 5057, 1995 WL 348046, at *1 & n.4 (N.D. Ill. June 6, 1995) (Aspen, J.) (citing *Gothelf v. Cal. Ivy, Inc.*, No 90 C 6976, 1992 WL 33928, at *1-2 (N.D. Ill. Feb. 13, 1992)).

Barela's attorneys also note that the plaintiff was unable to locate suitable consumer law counsel in New Mexico, and as a result, he retained the services of his present attorneys, who are based in Chicago. But precedent addressing this question, including decisions involving Plaintiff's own counsel (who are from a respected

consumer law firm that has an office Chicago in addition to offices in several other places, including Ohio), teaches that the location and conveniences of the attorneys are not material. Thus, in *Kapeluck*, Judge Gettleman instructed that the convenience of plaintiff's counsel (who also represent Plaintiff here) was "not . . . a factor [in the Section 1404(a) analysis], especially when plaintiff's only connection to Illinois is her choice of counsel." *Id.*, 2003 WL 23509647, at *2 (collecting cases). Similarly, in *Heston*, where the plaintiff's counsel (who also represent Plaintiff here) argued that a transfer to California would inconvenience them, Judge Bucklo held that "the location of counsel is, at best, of minor consideration when evaluating a transfer." *Id.*, 2003 WL 22243986, at *2 (citation omitted). These decisions are in accord with other precedent from this district. *See, e.g., Murphy v. Avon Prods., Inc.*, 88 F. Supp. 2d 851, 853 (N.D. Ill. 1999) (holding that "the location of counsel is not traditionally considered significant in §1404 analysis, and we shall therefore disregard it") (citation omitted); *Binz*, 1999 WL 90642, at *3 (collecting cases and stating that "the convenience of counsel is not a factor relevant to a Section 1404(a) determination"). In this regard, the Court notes that Judge Gettleman explained that the firm of Plaintiff's counsel also has an office in Ohio, as well as attorneys admitted there. *See Kapeluck*, 2003 WL 23509647, at *3; *accord Heston*, 2003 WL 22243986, at *2. As a result, transfer of the case to Ohio should not require any change of counsel for Plaintiff.

One final factor in the private interests analysis is the ability of the parties to bear the expenses of trial in the two putative venues. Neither party suggests that it cannot bear such costs, which should be relatively similar between the two fora (at least if one excises the substantial additional travel costs that Defendant would face if its witnesses needed to

8

come to a trial here—that factor cuts in favor of transfer). *See also Avon Prods.*, 88 F. Supp. 2d at 853 (costs of counsel not viewed as particularly material). Plaintiff also suggests that Chicago is a materially easier place to reach than Ohio. (*See* D.E. 23 at 7 (Plaintiff describing Chicago as the "central transportation point of the Midwest").) Although convenience to a plaintiff is certainly part of the Section 1404(a) analysis, in this particular case it does not weigh meaningfully in favor of this district. Perhaps the situation might be different if the proposed transfer involved some dramatically far-away place, like Alaska, or Hawaii, or Guam, but trading one Midwestern transportation center (Northern Illinois, with Chicago) for another (Southern Ohio, with access in the judicial district to the transportation facilities of Cincinnati, Columbus, and Dayton) does not involve that sort of concern.

Public and systemic interest factors weigh in favor of transfer, to the extent they point either way. The Court respectfully rejects any suggestion that the Northern District of Illinois is potentially more familiar with the Fair Credit Reporting Act than the Southern District of Ohio. Both federal fora are more than capable of addressing any legal questions that might arise.

Precedent also teaches that, when assessing the public interest in a putative transfer, "the guiding principle behind an inquiry into the 'interests of justice' is that the administration of justice will be served more efficiently when the action is brought before a court that is 'closer to the action.'" *Binz*, 1999 WL 90642, at * 3 (collecting cases; certain internal quotation marks omitted for clarity). This factor cuts strongly in favor of Ohio, as literally nothing material concerning this dispute occurred in Chicago or elsewhere in Illinois.

In sum, the Court believes that the overall balance of private and public interests align as they did in *Kapeluck* and *Heston* and warrant transfer to the Southern District of Ohio. *See Kapeluck*, 2003 WL 23509647, at *3 (stating that "only one factor, plaintiff's choice of forum, favors against transfer. All other factors . . . strongly favor transfer to the Southern District of Ohio."); *accord Avon Prods.*, 88 F. Supp. 2d at 853 (transferring case and stating, "[i]n sum, this case has no connection to Illinois of which we are aware besides the residence of . . . [plaintiff's] attorney"); *Heston*, 2003 WL 22243986, at *2 (similar). The overall balance of private and public interests reveals that transfer will not simply shift equal inconveniences from one side to another. Instead, transfer will promote a resolution of the dispute that is clearly less expensive and more efficient overall without sacrificing fairness for either party, and will allow for the litigation to proceed in a forum that actually has some meaningful connection to the dispute.

Plaintiff concedes that venue is appropriate in the Southern District of Ohio. Plaintiff does not suggest that this Court should consider a transfer to his home state of New Mexico. Because the balance of interests clearly favors transfer, the Court grants the Motion.

## CONCLUSION

For the foregoing reasons, Defendant's Motion in the alternative to transfer venue to the Southern District of Ohio (D.E. 20) is granted.

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Date: April 4, 2005